UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JAMES CONNOR,<br><br>          Petitioner,<br><br>     v.<br><br>STEVE SINCLAIR,<br><br>          Respondent. | CASE NO. C13-5622 RBL-JRC<br><br>REPORT AND RECOMMENDATION<br><br>NOTED FOR:<br>MAY 16, 2014 |

The District Court referred this petition for a writ of habeas corpus to United States Magistrate Judge J. Richard Creatura pursuant to 28 U.S.C. § 636(b) (1) (A) and (B), and local Magistrate Judge Rules MJR3 and MJR4. Petitioner seeks relief from a state conviction pursuant to 28 U.S.C. 2254.

The undersigned recommends denying the petition because none of petitioner's claimed errors violated clearly established federal law, as determined by the Supreme Court. *See,* 28 U.S.C. 2254(d).

1  BASIS FOR CUSTODY AND FACTS

2  The Pierce County Superior Court sentenced petitioner to life as a persistent offender

3  after a jury found him guilty of second degree assault (Dkt. 18, Exhibit 1).

4  The Washington State Court of Appeals noted that petitioner has spelled his last name

5  "Conner" and "Connor" and for consistency the Washington State Court of Appeals used the

6  spelling "Conner." (Dkt. 18, Exhibit 2, p. 1 fn1). This Court will do the same. The Washington

7  State Court Appeals decision is the last reasoned opinion on this matter because the subsequent

8  ruling of the Washington State Supreme Court simply denied review without discussion (Dkt.

9  18, Exhibit 9).

10

11  DuPont Police Sergeant Ross Mathison observed a vehicle speeding and running a red light. Mathison pulled the vehicle over to the side of the road, approached driver James Conner, and requested his license and insurance
12  information. Conner began searching through some paperwork on the front passenger seat but then suddenly reached over and started rolling up his window.
13  Standing near the driver's door, Mathison told Conner to stop and struck the window with his flashlight. Conner then revved his engine and "abruptly turned
14  the wheel to the left," forcing Mathison to jump out of the way when the car took off. Report of Proceedings (RP) (Oct. 26, 2009) at 202. According to Mathison,
15  Conner's action was a "deliberate attempt to pull the wheel to the left to turn into [him]." RP (Oct. 26, 2009) at 244. Mathison explained that if he had not jumped
16  back, his foot would have been run over and crushed. Mathison feared that Conner was trying to hurt him; there was no reason for Conner to turn left, as
17  there was nothing in the way to prevent him from going straight.

18  After Conner drove away, Mathison requested assistance. He pursued the vehicle and testified that during the pursuit, Conner maneuvered around numerous
19  other vehicles and failed to yield to Mathison's lights and sirens. Officer Tom Yabe and Trooper James Meldrum joined the pursuit. Officer Yabe deployed
20  stop sticks and immobilized Conner's vehicle, and Conner was arrested.

21  Mathison spoke with Conner once he was taken into custody. Conner said he knew he was going to jail and panicked; he also told Mathison he was not
22  trying to hit him and he was sorry.

23  Conner testified that he stopped at the red light and was not speeding and that he left the scene because he had a warrant for his arrest and wanted time to
24

call his girl friend to let her know he was going to be arrested. He further testified that he did not turn the steering wheel to the left, the vehicle was not capable of rapid acceleration, he did not intend to injure Mathison, and Mathison was not in danger of being struck.

The State charged Conner with one count of second degree assault with a deadly weapon (motor vehicle), one count of attempting to elude a pursuing police vehicle, and one count of illegal possession of a controlled substance. The State later amended the information to allege aggravating factors— Conner's high offender score and committing the offense against a law enforcement officer in the course of his official duties. Conner pleaded guilty to the possession and attempting to elude charges.

In preparation for trial on the assault charge, Conner took a polygraph test administered by polygraph specialist Richard Smith. Conner passed the examination, during which he answered, "No" when he was asked whether he turned his wheel to the left. Defense counsel requested a *Frye* hearing to determine admissibility of the polygraph results.

At the *Frye* hearing, Smith testified for the defense. Smith detailed his training, education, and certifications. He also described advancements in polygraph technology, such as monitoring a subject's respiration, electrodermal skin activity, and blood vessel dilation.

Smith testified that polygraphers use several different testing methods, but that he uses the Utah Zone of Comparison test ("Utah test"). According to Smith, this test has the greatest accuracy and the fewest inconclusive results. Smith also testified that recent studies show polygraph results are more accurate than other routinely admitted forms of evidence.

Smith testified that despite the Utah test's accuracy, numerous problems remain. Not everyone can be tested because certain emotional, psychological, or physical issues may interfere with the normal functioning of the automatic nervous system. Intent is difficult to test, and inconclusive results or false positives are common when addressing mental state in a polygraph test. Smith noted that countermeasures may allow subjects to beat a polygraph test, and polygraphers must devise ways to address those countermeasures.

Smith testified that the scientific community that understands and is devoted to polygraph research accepts polygraphy as valid and reliable and many psychologists view polygraphy favorably. Smith noted that polygraph tests are used by federal investigative intelligence institutes for truth verification and in postconviction sex offender treatment and monitoring in Washington. But Smith conceded that another community of scientists reject polygraphy.

REPORT AND RECOMMENDATION - 3

        The trial court denied Conner's motion to admit the polygraph results. The court found too many variables, including the subject's personality, the preparation of the examiner to the examinee, and the design of the test. The court deemed polygraphy "too subjective" to pass the *Frye* test.

        On October 20, 2009, the jury found Conner guilty of second degree assault. The court found Conner was a persistent offender under RCW 9.94A.030(34) and sentenced him to life in prison without possibility of parole.

(Dkt. 18, Exhibit 2, pp. 2-5) (*Citing Frye v United States,* 54 App. D.C. 46, 47, 293 F. 1013, 1014 (1923) (overruled by statute as recognized in *Daubert v. Merrell Dow Phamacuticals, Inc.*, 509 U.S. 579 (1993).

## PROCEDURAL HISTORY

Because respondent concedes that petitioner has exhausted the grounds for relief raised in his federal habeas corpus petition the Court does not need to set forth the procedural history (Dkt. 17, p. 5). The last reasoned opinion was the Washington State Court of Appeals' decision affirming the conviction and sentence (Dkt. 18, Exhibit 2). Petitioner's two grounds for relief are:

    1.    The trial court erred when it ruled that polygraph examinations are not accepted in the scientific community and are not sufficiently reliable, and the court's decision to exclude the exculpatory results of petitioners [sic] polygraph examination denied petitioner's constitutional right to present any defense at trial. The court also failed to apply the proper standard.

    2.    The State failed to meet its burden of proving the essential elements of assault because the evidence did not establish that petitioner intended to assault Mathison, and did not establish that petitioner used his car as a deadly weapon.

(Dkt. 7, at 1).

## EVIDENTIARY HEARING NOT REQUIRED

Evidentiary hearings are not usually necessary in a habeas case. According to 28 U.S.C. §2254(e)(2) (1996), a hearing will only occur if a habeas applicant has failed to develop the

factual basis for a claim in state court, and the applicant shows that: (A) the claim relies on (1) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court that was previously unavailable, or if there is (2) a factual predicate that could not have been previously discovered through the exercise of due diligence; and (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact finder would have found the applicant guilty of the underlying offense. 28 U.S.C. §2254(e)(2) (1996).

Petitioner's claims rely on established rules of constitutional law. Further, there are no factual issues that could not have been previously discovered by due diligence. Finally, the facts underlying petitioner's claims are insufficient to establish that no rational fact finder would have found him guilty of the crime. Therefore, this court concludes that an evidentiary hearing is not necessary to decide this case.

## STANDARD OF REVIEW

Federal courts may intervene in the state judicial process only to correct wrongs of a constitutional dimension. *Engle v. Isaac*, 456 U.S. 107 (1983). 28 U.S.C. § 2254 explicitly states that a federal court may entertain an application for writ of habeas corpus "only on the ground that [petitioner] is in custody in violation of the constitution or law or treaties of the United States." 28 U.S.C. § 2254(a) (1995). The Supreme Court has stated many times that federal habeas corpus relief does not lie for mere errors of state law. *Estelle v. McGuire*, 502 U.S. 62 (1991); *Lewis v. Jeffers*, 497 U.S. 764 (1990); *Pulley v. Harris*, 465 U.S. 37, 41 (1984);

A habeas corpus petition shall not be granted with respect to any claim adjudicated on the merits in the state courts unless the adjudication either: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as

1  determined by the Supreme Court; or (2) resulted in a decision that was based on an

2  unreasonable determination of the facts in light of the evidence presented to the state courts. 28

3  U.S.C. §2254(d).  Further, a determination of a factual issue by a state court shall be presumed

4  correct, and the applicant has the burden of rebutting the presumption of correctness by clear and

5  convincing evidence.  28 U.S.C. §2254(e)(1).

## DISCUSSION

1.  Refusal to admit polygraph evidence.

In 1998 the United State Supreme Court held that even a per se rule against the admission of polygraph evidence does not violate the United States Constitution. *U.S. v. Scheffer*, 523 U.S. 303, 309 (1998).  Petitioner has cited no Supreme Court case indicating that a state court must admit polygraph evidence.  Thus, the trial court is free to consider if plaintiff's evidence was admissible under state law and the state's rules of evidence.

A state trial court's ruling on the admissibility of evidence is not reviewable in a federal habeas corpus proceeding unless the ruling results in a denial of a fundamentally fair trial. *Briceno v. Scribner*, 555 F.3d 1069, 1077 (9th Cir. 2009).  Further, the standard of review imposed by 28 U.S.C. § 2254(d) is highly deferential to the state court's ruling and habeas relief is available only when the state court decision is "contrary to" clearly established federal law. *Id.* at 1076 (*Citing Williams v. Taylor*, 529 U.S. 362, 412–13 (2000)).

The trial court in this case held a "*Frye*" hearing and determined that petitioner's evidence was not generally accepted in the scientific community (Dkt. 18, Exhibit 2, pp. 3-4). The State Court applied the test set forth in 1923 in the case of *Frye v United States,* 54 App. D.C. 46, 47, 293 F. 1013, 1014 (1923).  Petitioner's own witness admitted that there is a community of scientists that reject polygraphy (Dkt. 18, Exhibit 2, p. 4).

1      Petitioner argues the trial court employed the wrong standard to determine if his evidence
2 was admissible (Dkt. 7, p. 8). Petitioner's argument stems from a misunderstanding of a later
3 Supreme Court holding. In 1993 the Supreme Court held that adoption of the Fed. R. Evid.
4 superseded the test set forth in *Frye*. *See*, *Daubert v. Merrell Dow Phamacuticals, Inc*., 509 U.S.
5 579, 587 (1993).

6      The Supreme Court's 1993 ruling applies to federal actions in federal courts where the
7 Federal Rules of Evidence apply. Plaintiff was tried in state court and Washington State has its
8 own rules of evidence. Thus, this is a state law issue and it is not cognizable in a habeas corpus
9 action. The Supreme Court holding in *Daubert* had no effect on Washington's ability to
10 continue to use the earlier test set forth in *Frye* to determine the admissibility of scientific
11 evidence.

12      Petitioner fails to show any error in the trial court's ruling. Petitioner also fails to show
13 the state court's ruling violated any clearly established federal law as determined by the Supreme
14 Court. As noted above, even using the Fed. R. Evid. standard, the Supreme Court upheld a per
15 se ban on the admissibility of polygraph evidence. *Daubert v. Merrell Dow Phamacuticals, Inc*.,
16 509 U.S. 579, 587 (1993). The undersigned recommends that the Court deny petitioner's first
17 ground for relief.

18      2.    Sufficient evidence to sustain a conviction for second degree assault.

19      The Washington State Court of Appeals considered petitioner's argument concerning
20 whether the evidence was sufficient to convict him of second degree assault and stated:

> Conner argues that the State failed to prove he intentionally assaulted Officer Mathison and [that] the car he drove was a deadly weapon. The State counters that sufficient evidence exists to support Conner's second degree assault conviction.
>
> In reviewing sufficiency of the evidence in a criminal case, the question is whether, after viewing the evidence in the light most favorable to the State, any

rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Hagler*, 74 Wn. App 232, 234-35, 875 P.2d 85 (1994). The party challenging a finding bears the burden of demonstrating that the finding is not supported by substantial evidence. *State v. Vickers*, 148 Wn.2d 91, 116 59 P. 3d 58 (2002).

We interpret all reasonable inferences from the evidence in favor of the State. *State v. Salinas*, 119 Wn. 2d 192, 201 P.2d 1068 (1992). A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom. *Salinas*, 119 Wn.2d at 201. Circumstantial evidence is as probative as direct evidence. *State v. Moles*, 130 Wn App, 461, 465, 123 P.3d 132 (2005). This court must defer to the trier of fact on issues of conflicting testimony, witness credibility, and persuasiveness of the evidence. *State v. Fiser,* 99 Wn. App. 714, 719, 995 P. 2d 107 (2000). Given the fact finder's opportunity to assess witness demeanor and credibility, we will not disturb those findings. *See State v. Pierce*, 134 Wn. App 763, 774, 142 P.3d 610 (2006).

Washington recognizes three assault definitions: "'(1) an attempt, with unlawful force, to inflict bodily injury upon another [attempted battery], (2) an unlawful touching with criminal intent [battery], and (3) putting another in apprehension of harm whether or not the actor actually intends to inflict or is incapable of inflicting that harm [common law assault].'" *State v. Nicholson*, 119 Wn. App. 855, 860, 84 P.3d 877 (2003) (alterations in original)(*quoting State v. Hupe*, 50 Wn. App. 277, 282, 748 P.2d 263 (1988)).

A person is guilty of assault in the second degree if he or she assaults another with a deadly weapon. RCW 9A.36.021(1)(c)(footnote omitted). A deadly weapon is defined to include a motor vehicle, "which, under the circumstances in which it is used, attempted to be used, or threatened to be used, is readily capable of causing death or substantial bodily harm." RCW 9A.04.110(6). "Substantial bodily harm" is defined as "bodily injury which involves a temporary but substantial disfigurement, or which causes a temporary but substantial loss or impairment of the function of any bodily part or organ, or which causes a fracture of any bodily part. RCW 9A.04.110(4)(b). Whether a weapon is deadly under the circumstances in which it is used is a question of fact. *State v. Carlson*, 65 Wn. App. 153, 160, 828 P.2d 30 (1992).

Here, the jury evaluated the conflicting testimony, each witness's credibility, and the persuasiveness of the evidence. Mathison testified that Conner turned the vehicle toward him, requiring him to jump out of the way for fear his foot would be run over. Mathison also stated that Conner could have driven straight rather than turn left. Conner's version of the facts differs, but the jury is entitled to believe one witness over another. Based on the testimony, the jury could have reasonably found that Conner intended to assault Mathison by causing him to fear substantial bodily harm.

It was also reasonable to infer that Conner's vehicle was a deadly weapon, i.e., powerful and heavy enough to cause substantial bodily harm in these circumstances. "The test is not to the extent of the wounds actually inflicted." *State v. Cobb*, 22 Wn. App. 21, 223, 589 P. 2d 297 (1978). Rather, the test is

REPORT AND RECOMMENDATION - 8

| | |
|---|---|
| 1 | whether the weapon was capable of causing death or substantial bodily harm under the circumstances of its use. *Carson*, 65 Wn. App. at 160. Mathison testified that Conner drove the car in a manner that could have caused him substantial bodily harm (by running over his foot). The record also indicates that the car was "heavy." RP (October 28, 2009) at 346. The jury could reasonably infer from the testimony and exhibits that Conner used the car as a "deadly weapon." |

5 (Dkt. 18, Exhibit 2, pp. 8-10). Federal Courts employ the same standard as the one used by the

6 Washington State Court of Appeals in this case to determine sufficiency of the evidence.

7 Evidence is sufficient to support a criminal conviction if the record reasonably supports a finding

8 of guilt beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 320 (1979). The question

9 is whether, after reviewing the evidence in the light most favorable to the prosecution, any

10 rational trier of fact could have found the essential elements of the crime beyond a reasonable

11 doubt (*id*.). (*citing Johnson v. Louisiana*, 406 U.S. 356, 362 (1972)). Thus, the Washington State

12 Court of Appeals applied the correct legal standard to the case.

13       Petitioner fails to show that the ruling of the Washington State Court of Appeals is

14 contrary to clearly established law as determined by the Supreme Court. The jury chose which

15 version of the facts it believed and their decision is not an unreasonable determination of the

16 facts in light of the evidence presented. The evidence outlined by the Washington State Supreme

17 Court is sufficient to withstand habeas corpus review. The standard of review set forth in 28

18 U.S.C. § 2254(d) precludes any grant of relief on this claim. Accordingly, the undersigned

19 recommends denial of this petition for habeas corpus.

20 CERTIFICATE OF APPEALABILITY

21       Petitioner seeking post-conviction relief under 28 U.S.C.§ 2254 may appeal a district

22 court's dismissal of the federal habeas petition only after obtaining a certificate of appealability

23 (COA) from a district or circuit judge. A certificate of appealability may issue only if petitioner

24

1  has made "a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. §

2  2253(c)(2). Petitioner satisfies this standard "by demonstrating that jurists of reason could

3  disagree with the district court's resolution of his constitutional claims or that jurists could

4  conclude the issues presented are adequate to deserve encouragement to proceed further."

5  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (*citing Slack v. McDaniel*, 529 U.S. 473, 484

6  (2000)). Pursuant to this standard, this Court concludes that petitioner is not entitled to a

7  certificate of appealability with respect to this petition.

8        Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have

9  fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P.

10  6. Failure to file objections will result in a waiver of those objections for purposes of de novo

11  review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit

12  imposed by Fed. R. Civ. P. 72(b), the clerk is directed to set the matter for consideration on May

13  16, 2014, as noted in the caption.

14        Dated this 21st day of April, 2014.

J. Richard Creatura
United States Magistrate Judge

REPORT AND RECOMMENDATION - 10